2006-NMCA-100

142 P.3d 26

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Erik ADAME, Defendant–Appellant.**

**No. 25,238.**

Court of Appeals of New Mexico.

June 14, 2006.

Certiorari Denied, No. 29,908,
Aug. 25, 2006.

As Corrected Sept. 5, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

**OPINION**

PICKARD, Judge.

{1} The main legal issue raised by this case is whether a defendant's statements to the police, given voluntarily but without benefit of warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may be used as the grounds for a search warrant pursuant to which physical evidence that forms the basis of a conviction is seized. We hold that under federal law, they may be so used. In addition, Defendant raises two other issues that we rule are mostly inapplicable to the facts or were not raised below.

**FACTS**

{2} Defendant was convicted of possession of a firearm by a felon based on his plea of no contest. The plea agreement reserved the right to appeal the issues raised in Defendant's motion to suppress. The motion to suppress, in turn, challenged a warrantless, non-consensual search of Defendant's home and a custodial interrogation without benefit of *Miranda* warnings. During the warrantless, non-consensual search, the officers found a gun that was not the gun involved in the felon-in-possession charge and some marijuana, and during the custodial interrogation without benefit of *Miranda* warnings, Defendant revealed that there was another gun in the residence, upon which the charge to which Defendant entered his plea was based. Using the information they received when searching the residence and interrogating Defendant, the officers prepared a warrant for firearms and narcotics among other things.

{3} Defendant's motion to suppress did not seek suppression of any particular thing, but instead just asked the trial court to declare the search without a warrant and without consent unconstitutional and asked the court to declare the questioning unconstitutional. At the motion to suppress hearing, Defendant mentioned fruit of the poisonous tree, but it appeared that he was arguing that the physical evidence from the first search of his home be suppressed, that the oral statement be suppressed, and that any testimony related to those things be suppressed as fruit of

the poisonous tree. Similarly, Defendant's requested conclusions of law were focused on the original warrantless, non-consensual search of the house and the custodial interrogation without *Miranda* warnings. They specifically requested only that the evidence found in that search be suppressed and that Defendant's statements be deemed inadmissible as evidence.

{4} The trial court did exactly as Defendant requested and suppressed the first gun found during the warrantless, non-consensual search. The trial court also ruled that Defendant's unwarned, oral statements could not be used against him at trial except for impeachment. However, the trial court went further and indicated that Defendant had not preserved any argument concerning greater protections under the New Mexico Constitution and then ruled that the police could use Defendant's unwarned but voluntary oral statement about the second gun to seize that gun under the authority of *United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). The trial court also ruled that a later, warned statement would be admissible.

**DISCUSSION**

{5} Defendant raises three issues on appeal. He first contends that (a) the trial court was correct in ruling that the original warrantless, non-consensual search was unconstitutional and (b) the affidavit for search warrant, which used both the information about the gun and marijuana found during this search and Defendant's statement about the second gun, gave rise to an invalid search warrant under the doctrine set forth in *State v. Wagoner*, 2001–NMCA–014, ¶ 40, 130 N.M. 274, 24 P.3d 306 (holding that the fruits of a search based partially on tainted information that was not from any independent source must be suppressed). He next argues that his custodial, oral statements made prior to *Miranda* warnings were involuntary and inadmissible, and in his reply brief he clarifies that he is arguing that *Patane* does not apply to this case because his statements were involuntary, thereby essentially arguing that the second gun should also have been suppressed. He finally argues that the statement, taken after *Miranda* warnings were

finally given, violated the rule set forth in *Missouri v. Seibert* and should have been ruled inadmissible. *See* 542 U.S. 600, 609, 617, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (holding that the interrogation technique of question first, then give *Miranda* warnings, and then question again was a circumvention of *Miranda* and resulted in inadmissible statements); *id.* at 618, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment) (same).

{6} We do not consider Defendant's first argument because it was not raised in the trial court. *See State v. Steven B.*, 2004–NMCA–086, ¶ 26, 136 N.M. 111, 94 P.3d 854 (stating the general proposition that matters not raised in the trial court may not be raised for the first time on appeal). This proposition is even more important in the area of state constitutional rights in which our cases are very specific about how such issues must be preserved. *See State v. Gomez*, 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (indicating that where established New Mexico precedent construes our constitution as providing greater protection, the appellant need only assert the constitutional principle and show the factual basis needed for the trial court to rule on the issue). In this case, as the trial court expressly ruled, Defendant made no mention of New Mexico cases and did not even call the trial court's attention to the need to rule on the suppression of the gun at issue, much less explain that he was challenging the warrant and challenging it on the basis that it was based on partially invalid information. In *Wagoner*, on which Defendant relies on appeal, we expressly ruled on the basis of the New Mexico Constitution, and thus Defendant's preservation of this issue was insufficient. *See Wagoner*, 2001–NMCA–014, ¶ 28, 130 N.M. 274, 24 P.3d 306.

{7} We also do not consider Defendant's issue concerning his written statement because even if there was error in relation to it, which there was not, correction of it would not affect the result in this case. *See Gracia v. Bittner*, 120 N.M. 191, 197, 900 P.2d 351, 357 (Ct.App.1995) (holding that an appellate court will not reverse a trial court's decision when doing so would not affect the result in the case). Here, Defendant pleaded no con-

test on the basis of a gun that was found in his house after the trial court ruled that neither the other things found in his house nor his unwarned, oral statements admitting to possessing the gun would be admitted into evidence. Defendant's brief twice informs us that the post-*Miranda* "written statement does not contain anything about the guns[.]" Thus, any ruling about this written statement is entirely harmless.

{8} Defendant's brief does suggest that there were additional oral statements made after Defendant received *Miranda* warnings. In these statements, Defendant again admitted to possessing the gun for which he was convicted. To the extent that the trial court ruled these statements to be admissible and that Defendant challenges their admission on the basis of *Seibert*, we hold that *Seibert* does not apply to this case. *Seibert* was directed to a considered police tactic of circumventing the *Miranda* requirements by questioning first, obtaining a statement, giving warnings, and then obtaining the same statement. Here, in contrast, as will be seen, the initial police questioning was about a murder for which Defendant was not a suspect, and the questioning occurred before the police knew Defendant was a felon. The police were not trying to obtain a statement incriminating Defendant with regard to the crime of being a felon in possession by evading the *Miranda* requirements, and therefore *Seibert* does not apply. *See* 542 U.S. at 606, 124 S.Ct. 2601 (describing the prohibited police tactic).

■ {9} We therefore turn to the only issue of consequence in this case, and that is whether Defendant's unwarned, oral statements could be used as the basis for the search warrant. Although Defendant did not specifically articulate this issue below, the trial court was apparently aware of it and expressly ruled on it. Therefore, we will address it. *See State v. Montoya*, 2005–NMCA–005, ¶ 9, 136 N.M. 674, 104 P.3d 540 (indicating that an issue will be sufficiently preserved if the trial court expresses that it understands the issue and makes a ruling on it). However, we address it solely as a question of federal law because Defendant did not argue at trial and does not argue on appeal

that *Patane* should not be followed as a matter of state constitutional law.

{10} In *Patane*, in a divided opinion, the United States Supreme Court held that the failure to give *Miranda* warnings did not require suppression of evidence that was the fruit of a suspect's unwarned but voluntary statements. A three-justice coalition expressly so held. *Patane*, 542 U.S. at 633–34, 124 S.Ct. 2620. Two other justices agreed with that ruling, but found it unnecessary to determine, as the lead opinion had, whether the failure to warn should be considered a violation of *Miranda* itself. *Id.* at 644–45, 124 S.Ct. 2620 (Kennedy and O'Connor, JJ., concurring in the judgment). The Court made it clear that *Miranda* is a prophylactic rule designed to effectuate the right a suspect has not to be compelled to testify against himself at a criminal trial. *Patane*, 542 U.S. at 636–37, 124 S.Ct. 2620. These concerns are not implicated by admitting into evidence the fruits of unwarned statements. *See id.* at 638–39, 124 S.Ct. 2620. In fact, statements taken in violation of the *Miranda* rule have long been held to be admissible in evidence for impeachment purposes. *Patane*, 542 U.S. at 639, 124 S.Ct. 2620. Thus, using unwarned statements to obtain physical evidence is no more a violation of the constitution than using unwarned statements for other proper purposes, i.e., purposes not involving use as evidence in the prosecution's case in chief. *Id.* at 640, 641 and 645, 124 S.Ct. 2620 (Kennedy and O'Connor, J.J., concurring in the judgment). The Court limited its ruling to voluntary statements, as the fruits of involuntary statements are frequently excluded for other reasons. *See id.* at 634, 639, 644, 124 S.Ct. 2620.

{11} Defendant's brief in chief argues that "Un-*Mirandized* [ ] statements taken in a custodial setting are not 'voluntary' and are inadmissible against a defendant." Defendant's briefs argue that any custodial statements made during questioning and prior to being informed of the Fifth Amendment privilege are involuntary and inadmissible under *Miranda*. Defendant argues that the following factors make his statements involuntary: he was interrogated while "in custody, handcuffed, and at the police station, locked in a

holding cell or in the officers' 'office' the entire time."

{12} Defendant's argument shows a basic misunderstanding of the differences between a *Miranda* issue and a voluntariness issue. *See State v. Cooper*, 1997–NMSC–058, ¶ 31, 124 N.M. 277, 949 P.2d 660 (detailing the analytical distinction between a *Miranda* analysis and a voluntariness analysis). The fact that Defendant was handcuffed and at the police station shows that he was in custody, and the trial court properly suppressed his statements from use in the prosecution's case in chief because he was interrogated while in custody and prior to receiving warnings. *See id.* ¶ 33. An entirely different analysis, however, is necessary to determine whether Defendant's statements were voluntary, and that analysis requires inquiry into whether the statements were induced by "fear, coercion, hope of reward, or some other improper inducement." *See id.* ¶ 32.

{13} Defendant's brief in chief mentions, in connection with his contention that the initial search was improper, the following factors that perhaps would make a more persuasive case for involuntariness, but he does not rely on these facts in his argument: that prior to the search, Defendant was ordered out of his home, thrown to the ground, secured with handcuffs, and told that he would be shot if he moved. These facts could be relevant to a finding that a subsequent statement was involuntarily coerced, but the facts of this case show that much transpired between the time of this show of authority and Defendant's admission that he had two guns in his home. In particular, the officers asked if they could search Defendant's home and he refused them permission. After the officers transported Defendant to the police station, they continued to question Defendant about the location of suspects in a homicide for which Defendant was not a suspect; at this time, Defendant was very cooperative with the officers, volunteering information about the two guns he had in his home, neither of which was involved in the homicide. These were facts upon which the trial court was entitled to find that Defendant's admission about the second gun in his home was entirely voluntary and not coerced or otherwise improperly motivated by the officers' behavior earlier at his home. *See State v. Roybal*, 115 N.M. 27, 29, 846 P.2d 333, 335 (Ct.App.1992) (indicating that on motions to suppress, the trial court resolves conflicts in the evidence, chooses which inferences to draw, and weighs the evidence).

{14} Once the trial court properly found that Defendant's statements about the gun were voluntary, it was entitled to apply *Patane* to the facts of this case and refuse to suppress the gun. We therefore affirm the trial court's denial of suppression of the gun.

**CONCLUSION**

{15} Defendant's conviction of possession of a firearm by a felon is affirmed.

{16} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.