**Certiorari Denied, March 3, 2011, No. 32,840**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMCA-030**

**Filing Date: January 19, 2011**

**Docket No. 27,953**

**STATE OF NEW MEXICO,**

 **Plaintiff-Appellee,**

**v.**

**BLAINE OLIVAS,**

 **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF UNION COUNTY**
**Sam B. Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

### OPINION

**FRY, Chief Judge.**

**{1}** Defendant appeals his convictions for second degree murder and three counts of tampering with evidence for the shooting death of his friend, Johnny McKnight III (Victim). On appeal, Defendant raises four issues: (1) the district court erroneously refused to suppress two sets of statements Defendant made to the police regarding Victim's death, one of which was given without

1

Defendant's first being informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) his constitutional right to a speedy trial was violated; (3) he was improperly sentenced without being given an opportunity to present mitigating evidence; and (4) he was denied effective assistance of counsel.

**{2}**     We reverse the district court's denial of Defendant's motions to suppress because we conclude that, under the facts presented in this case, Defendant was subject to a custodial interrogation when he gave his first statement at the district attorney's office without the benefit of required *Miranda* warnings. Accordingly, we vacate Defendant's convictions and remand to the district court for further proceedings consistent with this opinion. For purposes of remand, we determine that despite the *Miranda* violation, Defendant voluntarily gave his statement at the district attorney's office. *See State v. Adame*, 2006-NMCA-100, ¶ 10, 140 N.M. 258, 142 P.3d 26 (explaining that the failure to give *Miranda* warnings does not require suppression of evidence that is the fruit of a suspect's unwarned, but voluntary, statements). We further hold that Defendant's argument regarding admissibility of a second statement taken while Defendant was in jail is not susceptible to review on appeal and that Defendant did not preserve his speedy trial argument. In light of our holding, we do not address Defendant's remaining two claims of error.

## BACKGROUND

**{3}**     In the late evening hours of October 12, 2004, police found Victim's body on the side of a state highway near Clayton, New Mexico, after responding to a report by a passing motorist. A medical investigator testified at trial that Victim had been killed by a gunshot wound to the head and that the manner of death was homicide. In the course of a criminal investigation into Victim's death, investigators from the New Mexico State Police Department learned from various Clayton residents, including Victim's ex-wife and a local sheriff, that Defendant and Victim, who were friends, had been seen together on the evening that Victim was killed.

**{4}**     After state and local police unsuccessfully attempted to make contact with Defendant several times over the course of two days following Victim's murder, a relative of Defendant contacted the police on October 14, 2004, and informed them that Defendant was willing to meet with investigators at a neutral location. After officers arrived at the location, they informed Defendant that they wanted to discuss Victim's death with him, and Defendant agreed to accompany the officers to the local district attorney's office for an interview. Once there, Agent Mark Lewandowski and Sergeant Miguel Aguilar, both of the New Mexico State Police, questioned Defendant regarding his whereabouts on October 12 and Victim's death. It is undisputed that *Miranda* warnings were not given to Defendant at any point during his encounter with police before or after questioning began at the district attorney's office. Although Defendant denied any involvement in Victim's murder, he told Sergeant Aguilar that he had seen "visions" of the crime and then, while narrating what he had seen in the visions to the officer, he relayed that someone named Pete had killed Victim, the manner in which the shooting had occurred, and where physical evidence taken from the crime scene could be found in the Clayton area. At the conclusion of the interview, Defendant was arrested on an outstanding warrant for an unrelated misdemeanor charge, of which he had himself informed the officers during the interview.

**{5}**     Based on the information Defendant gave in this first statement, investigators were immediately able to recover several pieces of incriminating physical evidence related to the crime,

2

including the murder weapon. Later that same day, Sergeant Aguilar interviewed Defendant a second time after he had been transported to jail on the unrelated misdemeanor warrant. Defendant does not dispute that he was given *Miranda* warnings in full and that he did not invoke his rights under *Miranda* at any time during this second interview. Sergeant Aguilar testified that this interview yielded no new information regarding Victim's murder, as Defendant reiterated only what he had previously stated at the district attorney's office.

**{6}**     Shortly thereafter, Defendant was charged with an open count of murder in connection with Victim's death and four counts of tampering with evidence. During pre-trial proceedings, Defendant sought to suppress both of his statements from October 14 on the grounds that: (1) he was subject to a custodial interrogation at the district attorney's office without being given the required *Miranda* warnings, (2) his jailhouse statement was the fruit of the poisonous tree from the earlier illegally obtained custodial interrogation, and (3) his statements were not voluntarily given. The district court denied Defendant's motions to suppress, finding that Defendant was not subject to a custodial interrogation at the district attorney's office and that the statement was voluntary. Defendant was later convicted at a jury trial, and this appeal followed.

## DISCUSSION

### A.     Admissibility of Defendant's Statements

**{7}**     The main issue on appeal is whether the district court erroneously admitted into evidence both statements Defendant made to police officers on October 14. On appeal, Defendant argues that both statements should have been suppressed because: (1) he was subject to a custodial interrogation at the district attorney's office, which required that officers administer *Miranda* warnings to him, and none were given; (2) his jailhouse statement was tainted by the initial, allegedly illegally obtained statement at the district attorney's office; and (3) neither statement was voluntarily given. We address each of Defendant's arguments in turn.

### 1.     Standard of Review

**{8}**     A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. In reviewing a district court's rulings on a motion to suppress, "[we] review[] factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. In addition, we "indulge in all reasonable inferences in support of the district court's ruling and disregard all evidence and inferences to the contrary." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070. Whether a defendant was subject to a custodial interrogation and whether a defendant's statement was voluntarily given are legal determinations that we review de novo on appeal. *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442 (applying de novo review to whether a defendant is subject to a custodial interrogation); *State v. Cooper*, 1997-NMSC-058, ¶¶ 25-28, 124 N.M. 277, 949 P.2d 660 (applying de novo review to whether a confession is voluntary).

### 2.     Admissibility of Defendant's Statement at District Attorney's Office

**{9}** We first address Defendant's argument that the district court erroneously refused to suppress his statement to Agent Lewandowski and Sergeant Aguilar during questioning at the district attorney's office. Defendant asserts that he was subject to a custodial interrogation during this interview, which required that officers advise him of his rights under *Miranda* prior to questioning him, and it is undisputed that no warnings were administered. On appeal, Defendant seeks reversal of the district court's ruling that the interview was non-custodial in nature and that *Miranda* therefore did not apply.

**{10}** In *Miranda*, the United States Supreme Court established a prophylactic rule requiring that suspects be advised of their right against self-incrimination under the Fifth Amendment when they are subjected to the inherently compelling pressures of custodial police interrogations. *Miranda*, 384 U.S. at 444, 467-68; *see State v. Javier M.*, 2001-NMSC-030, ¶ 14, 131 N.M. 1, 33 P.3d 1. Thus, it is well-established that law enforcement officers are obligated to administer *Miranda* warnings only when a suspect is subject to a custodial interrogation or, in other words, when he/she is "(1) interrogated while (2) in custody." *State v. Wilson*, 2007-NMCA-111, ¶ 12, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted). In this case, because the State concedes that Defendant was subject to an interrogation at the district attorney's office, the sole issue is whether Defendant was in custody such that *Miranda* warnings were required prior to the questioning. In determining whether an individual is in custody for purposes of *Miranda*, we "apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest?" *Wilson*, 2007-NMCA-111, ¶¶ 14, 23 (internal quotation marks and citation omitted). Because the test is an objective one, we do not consider the subjective beliefs of either the suspect or the questioning officers about whether the suspect was in custody; instead, we consider "how a reasonable man in the suspect's position would have understood his situation." *Id.* ¶ 14 (internal quotation marks and citation omitted). If no formal arrest occurred prior to questioning, our appellate courts engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place in order to decide whether the custody requirement is met. *See, e.g*, *State v. Smile*, 2009-NMCA-064, ¶ 27, 146 N.M. 525, 212 P.3d 413, *cert. quashed*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182. Additionally, our Supreme Court in *State v. Munoz*, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847, provided the following factors to guide our inquiry: "the purpose, place, and length of interrogation[,] the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant" (internal quotation marks and citations omitted).

**{11}** In the present case, Defendant contends that he was in custody because, among other things: (1) once Defendant agreed to meet with officers, they secured him in handcuffs at the rendezvous location and transported him in the back of a marked police car to the district attorney's office for questioning; (2) he was escorted at all times while at the district attorney's office, including during smoke breaks outside the building; (3) he was interrogated in a small room with the door closed and with two officers present at all times, one of whom sat between Defendant and the door; and (4) the questioning officers interrogated him by accusing him of Victim's murder and repeatedly directing him to confess. The State, however, argues that a custodial situation did not arise based on the following circumstances surrounding the interrogation: (1) Defendant was one of several individuals that the police attempted to make contact with in the immediate aftermath of Victim's death; (2) Defendant initiated contact with the officers and voluntarily agreed to accompany them to the district attorney's office to subject himself to "routine, non-custodial police questioning"; (3)

4

he was not searched at any time, was handcuffed during the transport out of a concern for officer safety, and was not physically restrained during the interview; and (4) the interview room was not locked and the physical surroundings were "innocuous and not of an intimidating nature."

{12}    We agree with Defendant and conclude that under the totality of the circumstances, he was in custody for purposes of *Miranda* during the interrogation at the district attorney's office. We find it significant that despite his willingness to submit to police questioning, it is undisputed that the officers who met Defendant at the rendezvous location and transported him to the district attorney's office never informed Defendant that he was not under arrest or that he was free to terminate the encounter at any time. In fact, Officer Bruce Skidmore, who transported Defendant to the district attorney's office, testified at the suppression hearing that if Defendant had attempted to leave the police car during the transport, he would have prevented him from leaving. Agent Dale Wagoner, who handcuffed Defendant at the rendezvous location, testified that he did so out of concerns for officer safety. The officers gave no explanation at the suppression hearing for why they handcuffed and transported Defendant rather than having Defendant follow them in his own mode of transportation or come with his relative who had arranged the rendezvous. Thus, we are not persuaded that handcuffing Defendant out of a concern for officer safety, even if warranted, rendered the situation non-custodial. *See Wilson*, 2007-NMCA-111, ¶¶ 32-33, 35 (referring to out-of-state case law for the proposition that placing a defendant in handcuffs "to ensure his own safety and that of the officers" is custodial for purposes of *Miranda* warnings, even when the officers told the defendant that he was not being placed under arrest (internal quotation marks and citation omitted)).

{13}    We recognize that our courts have considered a defendant's willingness to meet with officers and to voluntarily accompany them in police transport to be a factor, among others, in favor of holding that an interrogation is non-custodial. *See Nieto*, 2000-NMSC-031, ¶ 21 (holding that a suspect was not in custody where the suspect was "asked and agreed to accompany [the] police officers to the station, was free to leave or terminate the interview, and was provided transportation to and from the station" because these facts are "consistent with routine, non-custodial police questioning"); *Munoz*, 1998-NMSC-048, ¶ 43 (holding that a defendant was not in custody where the defendant willingly went with police to be questioned, was not handcuffed or searched, was not interviewed in a locked space, and was taken back home when the interview was completed). *But see* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, Orin S. Kerr, *Criminal Procedure* § 6.6(d), at 735 (3d ed. 2007) (stating the general proposition that a finding of custody is more likely "[i]f the so-called 'invitation' involves the person going to the station in the company of the police"). However, we do not consider these previous decisions to require the conclusion that willingness to meet voluntarily with officers outweighs other circumstances in our analysis; rather, we must consider the totality of circumstances.

{14}    The circumstances of Defendant's actual interrogation at the district attorney's office also indicate that Defendant was in custody. During the course of the interrogation, and in particular, in the initial ten to twenty minutes of questioning led by Agent Lewandowski, Defendant was subjected to a significant amount of pressure to admit guilt and he was confronted with evidence, albeit false or unsubstantiated at that point, of guilt. *See Munoz*, 1998-NMSC-048, ¶ 40 (among the factors considered in determining custody is the degree of pressure applied to the defendant and whether he was confronted with evidence of guilt). It is clear from our review of the partial transcript that Agent Lewandowski was seeking an admission of guilt or incriminatory information

from Defendant. Even at this early stage of questioning—at a time when the officers testified they lacked probable cause to believe that Defendant was involved in the murder—Agent Lewandowski repeatedly accused Defendant of killing Victim, called Defendant by Victim's first name during the interview, and told him multiple times that his fingerprints and DNA were found on Victim's truck and body. A reasonable person faced with this degree of confrontational and accusatory questioning would have believed that he/she was in custody. *See* LaFave, *supra*, § 6.6(f), at 751 ("And surely a reasonable person would conclude he was in custody if the interrogation is close and persistent, involving leading questions and the discounting of the suspect's denials of involvement.").

{15}    Similarly, we see no indication that the officers involved with the actual interrogation at the district attorney's office informed Defendant at any time that he was not under arrest, that he was free to leave the room if needed, or that he could terminate the interview by choice. *See Nieto*, 2000-NMSC-031, ¶ 21 (determining there was no custody partly because the defendant was "free to leave or terminate the interview"). Additionally, although Defendant was not placed in physical restraints during the interview, his movements were nonetheless restricted by the officers because he was not allowed to leave the room for smoke breaks without a police escort. *Cf. Bravo*, 2006-NMCA-019, ¶ 11 (holding that the defendant was not in custody, in part because "[h]er movements were not restricted in any way by the officers" and she could move freely throughout her home during the interview). The State offers no explanation for why Defendant required a police escort at all times or why, nevertheless, he was free to leave.

{16}    Thus, we hold that Defendant was subject to a custodial interrogation at the district attorney's office and, therefore, the officers' failure to administer *Miranda* warnings prior to questioning Defendant rendered any statement given by him  inadmissible at trial. We therefore reverse the district court's denial of Defendant's motions to suppress. Given our disposition, we need not address Defendant's argument, raised for the first time in his reply brief, that he was subject to a de facto arrest at the district attorney's office.

3.    **Admissibility of Defendant's Jailhouse Statement**

{17}    Defendant also contends that his subsequent jailhouse statement to Sergeant Aguilar, taken after *Miranda* warnings were given and Defendant allegedly waived his rights, should have been suppressed. We conclude that this issue is not ripe for determination in this appeal. Although Defendant briefly mentioned the jailhouse statement in his written suppression motions, the parties and the district court did not focus on the admissibility of the jailhouse statement at the suppression hearing. Indeed, the order resulting from the suppression hearing apparently addressed only the statement in the district attorney's office. The order stated that "under the totality of the circumstances and applying the reasonable person standard, a reasonable person in [D]efendant's position would not have felt coerced and *would have known he or she had the right to leave and was not in custody*" (emphasis added). The italicized language makes it clear that the order addressed only the statement in the district attorney's office since there is no dispute that Defendant was in custody at the time of the jailhouse statement. In addition, once the district court ruled the statement in the district attorney's office to be admissible, there was no reason to address the admissibility of the nearly identical statement made in the jailhouse. Now that we have determined that the statement in the district attorney's office was inadmissible, issues concerning what proceeded from that first interrogation become viable. Consequently, we leave open the question of the jailhouse

statement's admissibility and any other issues that might accrue for the district court to determine on remand.

### 4. Voluntariness of Defendant's Statement at the District Attorney's Office

**{18}** Although we have determined that Defendant's statement at the district attorney's office should have been suppressed in light of the *Miranda* violation, we nevertheless address his argument that this statement was involuntary. Our rationale for doing so is based on the fact that investigators recovered physical evidence connected to Victim's death as a result of the information Defendant provided at the district attorney's office through his "visions." As this Court has previously noted, the United States Supreme Court held in *United States v. Patane*, 542 U.S. 630 (2004), "that the failure to give *Miranda* warnings did not require suppression of evidence that [is] the fruit of a [defendant's] unwarned but *voluntary* statements." *Adame*, 2006-NMCA-100, ¶ 10 (emphasis added); *see State v. Verdugo*, 2007-NMCA-095, ¶ 16, 142 N.M. 267, 164 P.3d 966. Accordingly, we analyze whether the district court correctly found that Defendant's statement at the district attorney's office was voluntarily given because Defendant did not feel coerced in any way. We recognize that our holding regarding the voluntariness of this statement will likely have a bearing, on remand, as to the admissibility of any physical evidence that was recovered by officers as the fruit of Defendant's unwarned custodial interrogation at the district attorney's office. Additionally, our holding may bear upon a determination by the district court, on remand, as to the admissibility of Defendant's jailhouse statement. *See State v. Juarez*, 120 N.M. 499, 504, 903 P.2d 241, 246 (Ct. App. 1995) (explaining that "[a]n inadmissible pre-*Miranda* statement may lead to a post-*Miranda* statement which is admissible, if both statements are *voluntarily* given").

**{19}** We stated the general rule regarding the voluntariness of a defendant's statements in *State v. Lobato*, 2006-NMCA-051, ¶ 9, 139 N.M. 431, 134 P.3d 122.

> A confession is involuntary only if official coercion has occurred. Official coercion occurs when a defendant's will has been overborne and his capacity for self-determination [has been] critically impaired. If, however, the confession is the product of an essentially free and unconstrained choice by its maker, it may be used against the defendant without offending due process. On appeal, we review the totality of the circumstances to determine as a threshold matter of law whether the [s]tate has proved by a preponderance of the evidence that [the d]efendant's confession was voluntary.

*Id.* (first alteration in original) (internal quotation marks and citations omitted). Turning to Defendant's specific arguments, Defendant contends that the following factors demonstrate that his statement at the district attorney's office was involuntary: (1) the officers who questioned him were aware that he had an outstanding warrant for his arrest, (2) he felt pressured to talk because he wanted to return to his family, (3) he requested that the tape recording be stopped because he feared he would be harmed if the "real killer" learned he was speaking to officers, and (4) he cried during the interrogation.

**{20}** We are not persuaded by Defendant's argument and conclude that the factors Defendant relies upon do not demonstrate, under the totality of the circumstances, that official coercion or overreaching police misconduct occurred during the interrogation. With regard to Defendant's

outstanding arrest warrant, Defendant does not assert that the officers used the warrant to threaten or coerce him into giving a statement or that they promised him leniency on the warrant at any time during the questioning. According to the uncontradicted testimony of the officers at the suppression hearing, it was Defendant who brought the warrant to the officers' attention, and the officers informed Defendant they would not address the warrant issue until after the interview regarding Victim's death was concluded. In fact, Sergeant Aguilar testified that the validity of the warrant was not known until after the interrogation was concluded. As for Defendant's contention that he was fearful during the interrogation and that he felt pressured to talk, Defendant does not assert that any alleged fear or pressure he felt was the result of any police misconduct. Without any link between Defendant's asserted factors and any type of coercive police activity or misconduct, we are unable to conclude that his statement was involuntary. *See Munoz*, 1998-NMSC-048, ¶ 21 ("Coercive police activity is a necessary predicate to the finding that a confession is not voluntary [and] [f]or the confession to be involuntary, there must be an essential link between coercive activity of the [s]tate . . . and a resulting confession by a defendant." (first alteration in original) (internal quotation marks and citations omitted)). Thus, we hold that Defendant's statement at the district attorney's office was voluntary, although itself inadmissible.

## B.    Speedy Trial

**{21}**    In light of our holding on the suppression issue, the only other issue we address is Defendant's claim of a speedy trial violation because if we were to determine that such a violation occurred, Defendant would be entitled to outright dismissal rather than remand to the district court. Defendant contends that his constitutional right to a speedy trial was violated because his trial did not occur until thirty-three months after his arrest on the underlying charges of murder and tampering with evidence. The State argues that Defendant did not preserve this argument for appeal. We agree with the State.

**{22}**    "It is well-settled law that in order to preserve a speedy trial argument [for appellate review], [the d]efendant must properly raise it in the lower court and invoke a ruling." *State v. Lopez*, 2008-NMCA-002, ¶ 25, 143 N.M. 274, 175 P.3d 942. In this case, although Defendant filed a motion demanding a speedy trial shortly after he was arraigned on the charges, there is no indication that the district court ever ruled on the motion or that it ever had any occasion to apply the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *See State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387 (describing the analytical framework for addressing a speedy trial violation, which requires weighing the four *Barker* factors). Defendant argues that he meaningfully asserted his constitutional right to a speedy trial by opposing the State's requests for continuances of the trial setting and for rule extensions under Rule 5-604 NMRA. We are not persuaded that the district court's rulings on these issues demonstrated its position on the speediness of Defendant's trial and were therefore the equivalent of a specific ruling on Defendant's speedy trial argument. Our Supreme Court rejected a similar argument in *State v. Rojo*, 1999-NMSC-001, ¶ 51, 126 N.M. 438, 971 P.2d 829, where the Court concluded that "extensions of time under Rule 5-604 are analytically distinct from the issue of whether [the d]efendant's constitutional right to a speedy trial was violated, and a ruling on one of these issues does not necessarily imply a ruling on the other." Given Defendant's failure to invoke a ruling below on whether the State violated his constitutional right to a speedy trial, we hold that the issue was not preserved for appellate review. *See id.* ¶¶ 49-53; *see also Lopez*, 2008-NMCA-002, ¶¶ 25-26.

## CONCLUSION

{23}    For the foregoing reasons, we reverse Defendant's convictions and remand to the district court for further proceedings consistent with this opinion.

{24}    **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Olivas_, Docket No. 27,953**

| AE | **APPEAL AND ERROR** |
|----|----------------------|
| AE-PA | Preservation of Issues for Appeal |
| AE-RM | Remand |
| AE-SR | Standard of Review |

| CT | **CONSTITUTIONAL LAW** |
|----|------------------------|
| CT-CF | Confession |
| CT-MW | Miranda Warnings |
| CT-ST | Speedy Trial |
| CT-SU | Suppression of Evidence |

| CL | **CRIMINAL LAW** |
|----|------------------|
| CL-HO | Homicide |

| CA | **CRIMINAL PROCEDURE** |
|----|------------------------|
| CA-CF | Confession |
| CA-EA | Effective Assistance of Counsel |
| CA-MW | Miranda Warnings |
| CA-RL | Revocation of Driver's License |
| CA-RV | Revocation of Probation |
| CA-RA | Right Against Self-incrimination |
| CA-RD | Right to Speedy Trial |
| CA-SI | Self-incrimination |
| CA-SP | Speedy Trial |
| CA-SE | Substantial or Sufficient Evidence |
| CA-VJ | Vacating Judgment |

**EV**         **EVIDENCE**
EV-AE       Admissibility of Evidence
EV-SU       Suppression of Evidence