This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                             **NO. 30,432**

**DANIEL GARZA,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlik, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellant

Jacqueline L. Cooper, Acting Chief Public Defender
Kathleen T. Baldridge, Assistant Appellant Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**FRY, Judge.**

The State appeals the district court's grant of Defendant's motion to suppress evidence and the resulting dismissal of the charges against him. The district court

ruled that physical evidence seized pursuant to a warrant issued as the result of a custodial interrogation without benefit of a *Miranda* warning was inadmissible as the ["]fruit of [the] poisonous tree."  For the reasons discussed below, we affirm.

**BACKGROUND**

Defendant was arrested on an outstanding warrant but was not advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  After Defendant was in custody, the arresting officer, Agent Patrick Bucksath, asked Defendant whether he had anything illegal in his truck.  Defendant answered, "Maybe a little accidental paraphernalia."  Relying on Defendant's unwarned statement, Agent Bucksath detained the truck and obtained a search warrant for its contents.

The search of the vehicle yielded illicit drugs and paraphernalia. Defendant was charged by criminal information with one felony count of trafficking a controlled substance by distribution in violation of NMSA 1978, Section 30-31-20(A)(2) (2006), five felony counts of possession of a controlled substance in violation of NMSA 1978, Section 30-31-23 (2005), and one misdemeanor count of possession of drug paraphernalia in violation of NMSA 1978, Section 30-31-25.1(A) (2001).

Because his statement was made without the benefit of a *Miranda* warning, Defendant moved to suppress the physical evidence seized as a result of the search warrant.  The district court granted the motion to suppress, agreeing with Defendant

that the evidence was the ["]fruit of [the] poisonous tree." On appeal, the State concedes that Defendant's statement was given pursuant to an unwarned custodial interrogation. But the State raises three basic arguments why the physical evidence was admissible nonetheless.

First, the State argues that under the United States Constitution, non-testimonial evidence seized as a result of unwarned but voluntary statements is admissible. For this argument, the State relies on *United States v. Patane*, 542 U.S. 630 (2004). *Patane* holds that the physical fruits of an unwarned confession are admissible, provided the confession was offered voluntarily. *Id.* at 637. This Court applied *Patane* in *State v. Adame*, 2006-NMCA-100, 140 N.M. 258, 142 P.3d 26, also in the context of a voluntary admission. The State argues that Defendant's statement regarding "accidental paraphernalia" was offered voluntarily and that, therefore, *Patane* should apply. Second, the State argues that Defendant failed to preserve an argument that, to the extent to which it affords greater protection than its federal counterpart, the New Mexico Constitution should apply to this case. Third, the State argues that even if Defendant did preserve that argument, he is not entitled to greater relief under the New Mexico Constitution.

# DISCUSSION

## Preservation of State Constitutional Issue

As an initial matter, we consider the State's argument that Defendant failed to preserve his argument that the New Mexico Constitution affords greater protection than the United States Constitution under the facts of this case. Had the State prevailed in the district court, it would be correct in arguing that we must review the record to determine whether Defendant preserved his state constitutional argument. However, Defendant prevailed below, and we are therefore free to consider the legal question whether the New Mexico Constitution would afford Defendant greater relief. "As the appellee, . . . [the d]efendant was not strictly required to preserve his arguments; we affirm if the trial court decision was right for any reason, as long as the arguments in favor of affirmance are not fact[-]based such that it would be unfair to entertain them for the first time on appeal without notice to the appellant." *State v. Granville*, 2006-NMCA-098, ¶ 12, 140 N.M. 345, 142 P.3d 933. Accordingly, we conclude that it was unnecessary for Defendant to preserve the purely legal argument that the New Mexico Constitution affords greater protection than the United States Constitution.

**Standard of Review**

A motion to suppress presents a mixed question of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "[W]e review mixed questions of law and fact de novo, particularly when they involve constitutional rights." *State v. Verdugo*, 2007-NMCA-095, ¶ 12, 142 N.M. 267, 164 P.3d 966 (alteration in original) (internal quotation marks omitted). "We review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785.

**Interstitial Analysis**

The issues in this case invoke both the right against unreasonable search and seizure, under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, and the right against self-incrimination protected by the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution. New Mexico applies interstitial analysis of constitutional claims; that is, when faced with a question involving a right arguably protected under both the New Mexico and United States Constitutions, we determine first whether the right is protected under the federal constitution. *State v. Gomez,*

1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1.  Only if it is not do we examine the claim under the state constitution.  *Id.*

**Admissibility of Physical Fruits of Non-Mirandized Custodial Interrogation**

Having defined the constitutional framework under which we will analyze the issues on appeal, we proceed to a discussion of federal law and New Mexico's application of federal law in this context.  The crux of this matter is whether the State may introduce physical evidence seized on the basis of an admission made without the benefit of a *Miranda* warning.  The State argues that this matter is controlled by *Patane*, which holds that the self-incrimination clause of the Fifth Amendment does not require suppression of physical evidence obtained as a result of non-Mirandized but voluntary statements.  *Patane*, 542 U.S. at 637.  The State notes that *Miranda* is violated, not by the failure to warn an arrestee of his rights before questioning, but only when statements taken in response to that questioning are introduced at trial.  "[P]olice do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn."  *Patane*, 542 U.S. at 637.  "Potential [*Miranda*] violations occur, if at all, only upon the admission of unwarned statements into evidence at trial."  *Patane*, 542 U.S. at 641.  Therefore, the State argues, Agent Bucksath's unwarned custodial interrogation of Defendant was not, in itself, violative of Defendant's rights under the Fifth Amendment of the United States Constitution.

This Court applied the federal analysis set forth in *Patane* in *Adame*, 2006-NMCA-100, ¶ 14. *Adame*, like *Patane*, involved the admission by a felon that he possessed a firearm, in response to a custodial, non-Mirandized interrogation. *Adame*, 2006-NMCA-100, ¶ 2; *see Patane*, 542 U.S. at 635. We note that, in *Adame*, the police obtained a warrant based on the unwarned admission, whereas in *Patane*, the police seized evidence on the spot. *Patane*, 542 U.S. at 635; *Adame*, 2006-NMCA-100, ¶ 2. As is noted above, this case involves an arrest warrant and is therefore more similar to *Adame* (though this distinction is ultimately immaterial under federal law because *Patane* holds that only testimonial evidence is subject to Fifth-Amendment protection). *Patane*, 542 U.S. at 637. *Adame* followed *Patane* in holding that the firearm was admissible because

> *Miranda* is a prophylactic rule designed to effectuate the right a suspect has not to be compelled to testify against himself at a criminal trial. These concerns are not implicated by admitting into evidence the fruits of unwarned statements. In fact, statements taken in violation of the *Miranda* rule have long been held to be admissible in evidence for impeachment purposes. Thus, using unwarned statements to obtain physical evidence is no more a violation of the constitution than using unwarned statements for other proper purposes, i.e., purposes not involving use as evidence in the prosecution's case in chief.

*Adame*, 2006-NMCA-100, ¶ 10 (citations omitted). *But see State v. Wagoner*, 2001-NMCA-014, ¶ 21, 130 N.M. 274, 24 P.3d 306 ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired

7

shall not be used before the Court but that it *shall not be used at all.*" (emphasis added) (internal quotation marks omitted)).  As had the *Patane* court, we limited our holding to voluntary statements. *Adame*, 2006-NMCA-100, ¶ 10; *see Patane*, 542 U.S. at 634, 639, 644.  Because we concluded that the confession had been made voluntarily, we held that the trial court had properly applied *Patane* to allow the gun into evidence. *Adame*, 2006-NMCA-100, ¶ 14.

Accordingly, in the present case, we consider the determinative factor under federal analysis:  whether Defendant's unwarned statement was given voluntarily.  In its letter decision, the district court found that:

1. Defendant was in custody on warrant served;

2. Defendant was not [M]irandized before being questioned although "in custody."  Defendant had been handcuffed;

3. All of [D]efendant's verbal responses to questioning should be suppressed; [and]

4. This information was then used to acquire the warrant for search.  Items seized thereafter should be suppressed as ["]fruit of [the] poisonous tree."

**Voluntariness of Defendant's Statement**

The district court did not specify whether it found Defendant's unwarned statement to be voluntary.  However, because we review the ruling in the light most favorable to affirmance, we presume that the district court relied on federal law in

8

reaching its decision, that it determined that the statement was involuntary, and, therefore, that the resulting physical evidence should be suppressed. *See Cline*, 1998-NMCA-154, ¶ 6; *see also State v. Burk*, 82 N.M. 466, 469, 483 P.2d 940, 943 (Ct. App. 1971) (stating that "the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary" (internal quotation marks omitted)).

The State bears the burden of proving by a preponderance of the evidence that Defendant's statement was voluntary. *State v. Cooper*, 1997-NMSC-058, ¶ 30, 124 N.M. 277, 949 P.2d 660. The methods used to obtain the statement must be "compatible with a system that presumes innocence." *Id.* (internal quotation marks omitted). The statement must not have been extracted "through fear, coercion, hope of reward or other improper inducements." *Id.* (internal quotation marks omitted). If the State fails to carry this burden, we must find as a matter of law that the statement was involuntary. *Id.* We review the question of voluntariness de novo, examining "the entire record and circumstances surrounding the confession." *State v. Salazar*, 1997-NMSC-044, ¶ 59, 123 N.M. 778, 945 P.2d 996. "We will look to the totality of the circumstances as a basis for our legal conclusion. However, when faced with conflicting evidence, we will defer to the factual findings of the trial court, as

9

long as those findings are supported by evidence in the record." *Cooper*, 1997-NMSC-058, ¶ 26 (citation omitted).

We analyze claims of involuntary confessions under the three-part test described in *Cooper*, 1997-NMSC-058, ¶ 25. The first phase explores the facts surrounding the confession, examining the totality of the circumstances under which the confession was made. *Id.* ¶ 26. The second phase involves a subjective "determination of how the accused reacted to the external facts." *Id.* ¶ 27 (internal quotation marks omitted). "This is an admittedly imprecise effort to infer—or imaginatively recreate—the internal psychological response of the accused to the actions of law enforcement officials." *Id.* The third phase examines the "legal significance" of the defendant's reaction to the circumstances surrounding his confession. *Id.* ¶ 28.

As to the first prong of the test, the evidence revealed the following. After Defendant was in custody and handcuffed, Agent Bucksath asked whether there was anything illegal in the truck, which Defendant denied. Agent Bucksath requested, and Defendant denied, consent to search the vehicle. Defendant was cooperative and asked whether he could eat the hamburger he had ordered while the pair waited for a vehicle to transport Defendant to the detention center. Agent Bucksath repositioned Defendant's handcuffs in front of him to allow him to eat.

Defendant asked whether he could use his own cell phone to arrange to have his truck picked up, and Agent Bucksath agreed. Defendant placed three calls in an attempt to locate the truck's owner. During one call, the agent overheard Defendant say, "poquito, no más," which he understood to mean "a little bit, not much." The agent's first thought was that the person on the phone had asked, "Are you holding anything?" Once Defendant was off the phone, Agent Bucksath asked him, again, whether he had anything illegal in the truck. This time, Defendant answered, "Maybe a little accidental paraphernalia."

Because Agent Bucksath was the only witness at the suppression hearing, the record contains no direct evidence of Defendant's subjective state of mind during the interrogation. However, we can reasonably infer that, as to the second prong of the *Cooper* test, Defendant felt coerced. *See Aguilar v. State*, 106 N.M. 798, 803, 751 P.2d 178, 183 (1988) (explaining that "[i]n contrast to the Court's deferment under the first phase of the analysis, the appellate court in the second and third phases of the analysis must draw its own conclusions based on the totality of the circumstances"). There was evidence that Defendant repeatedly tried and failed to reach the truck's registered owner by phone within the time before a police vehicle arrived to transport him to the detention center. As a result, it appears that Agent Bucksath capitalized on Defendant's increasing stress and frustration as he exhausted avenues for reaching the

11

truck's owner within the time available to him, asking again about illegal items once Defendant's hopes of reaching the truck's owner had begun to wane.

The third *Cooper* phase requires us to determine the "legal significance" of Defendant's reaction to the circumstances of the questioning. 1997-NMSC-058, ¶ 28. We acknowledge the State's argument that Defendant's statement was voluntary because he was cooperative, was allowed to eat his hamburger, and was allowed to make calls on his personal phone. We consider those facts in the "totality of the circumstances." *Id.* ¶ 26. But we are not persuaded that, as a matter of law, the record can only be interpreted as depicting a voluntary statement. As we discussed above, the record shows that Agent Bucksath conducted a custodial interrogation pursuant to an investigation unrelated to the purpose of his detention of Defendant, but that he did not first advise Defendant of his constitutional rights. Once Defendant was under the stress and pressure of his inability to find the registered owner of his truck, the agent then reopened a line of questioning he had closed. Only then did he succeed in extracting the confession the State now alleges was offered voluntarily.

Applying the *Cooper* test described above, we hold that the State failed to carry its burden of establishing that Defendant's confession of "accidental paraphernalia" was voluntary. While agent Bucksath did not engage in brutal physical tactics of interrogation, he did take advantage of a stressful situation to inquire a second time

12

into matters, unrelated to the reasons for the detention, regarding which he had already been provided an answer.

Under federal analysis, physical evidence seized pursuant to an unwarned statement is admissible only when the statement is voluntary. *See Patane*, 542 U.S. at 640 (stating that "those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial" (emphasis omitted) (internal quotation marks omitted)). Because we conclude that the district court properly found Defendant's statement to be involuntary, we hold that the evidence seized as a result of the statement was inadmissible. In light of our holding, we need not engage in analysis under the New Mexico Constitution.

**CONCLUSION**

We conclude that the non-testimonial fruits of Defendant's unwarned confession were inadmissible under the facts of this case. Accordingly, we affirm the district court's grant of Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**