This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                    **NO. 31,587**

**PAUL MEEKS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Defendant's motion for partial rehearing on second memorandum opinion is granted. The memorandum opinion filed in this case on April 2, 2013, is hereby withdrawn, and this opinion is substituted in its place.

**{2}** Defendant Paul Meeks appeals a district court order denying his motion to suppress. In this Court's notice of proposed summary disposition, we proposed to affirm Defendant's conviction for criminal sexual contact of a minor. Defendant filed a memorandum in opposition, which we considered. Because we were not persuaded by his arguments, we affirmed Defendant's conviction in a Memorandum Opinion, filed January 26, 2012. Subsequently, Defendant filed a motion for rehearing. We granted the motion, withdrew the Opinion, and assigned the case to the Court's general calendar. After reviewing the parties' briefs and the record on appeal, we remain unpersuaded by Defendant's arguments and affirm.

**{3}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural background, we discuss the pertinent facts within the context of Defendant's arguments.

**DISCUSSION**

**Standard of Review**

**{4}** "In reviewing a district court's ruling on a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo

review." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070 (alteration, internal quotation marks, and citation omitted). "Determining whether or not a police interview constitutes a custodial interrogation requires the application of law to the facts." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442.

{5}     We first address Defendant's argument that he was not free to leave and then consider Defendant's remaining arguments that, under the totality of the circumstances, he was under custodial arrest.

**Freedom to Leave**

{6}     Law enforcement officers must advise a suspect of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), when he is the subject of a "custodial interrogation." *Nieto*, 2000-NMSC-031, ¶ 20.  The sole issue in this case is whether Defendant was "in custody" at the time he gave his statement to the police and, as a result, whether *Miranda* warnings were required.  In order to establish that an individual is in custody for *Miranda* purposes, "the court must apply an objective test to resolve the ultimate inquiry:  was there a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 23, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted).  In this case, Defendant was not formally arrested at the police department in Lynchburg, Virginia.  Therefore, we must "engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place

3

in order to decide whether the custody requirement is met." *State v. Olivas*, 2011-NMCA-030, ¶ 10, 149 N.M. 498, 252 P.3d 722.

{7}    We have previously identified several factors to consider when determining whether a reasonable person would believe he is free to leave, including "the purpose, place, and length of interrogation[,] . . . the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant." *Bravo*, 2006-NMCA-019, ¶ 9 (internal quotation marks and citation omitted). Applying these factors, for the reasons that follow, we conclude that Defendant was free to leave the interview room.

{8}    As a preliminary matter, this Court granted Defendant's motion for rehearing based on the factual representations and issues raised in his motion for rehearing, specifically those issues related to whether Defendant was free to leave. *See Wilson*, 2007-NMCA-111, ¶ 22 (determining that freedom to leave is a factor relevant to the inquiry of whether a person is in custody for *Miranda* purposes). Defendant argued that the limited record on summary calendar did not make it clear whether he could have exited the two locked doors without assistance. Defendant also asserted that the door to the interrogation room "was closed and blocked by an armed officer[,]" and that "no witness testified affirmatively that the door was *not* locked." In addition, he contended that while the officer "blocked" the door or was "posted" at the door, the

4

"interrogating agent" used "aggressive and accusatory techniques." Defendant's choice of words was clearly intended to conjure up a mental image of "custodial interrogation" that successfully resulted in this case being placed on the general calendar.

**{9}** Contrary to the representation that the door was "blocked," however, our review of the video recording of Defendant's interview shows Defendant, Agent James Butterfield of the New Mexico State Police, and the Lynchburg police officer enter the room from the *left* of the camera. Throughout the interview, the Lynchburg officer is then intermittently visible in the video sitting to the *right* of the camera. It is clear from the video that the door was never "blocked" as Defendant contends on appeal. It is noteworthy that during the suppression hearing, defense counsel never argued that the door was blocked but said only that the Lynchburg officer was "by the door."

**{10}** Further, Defendant's own actions belie his assertion that he did not believe he was free to leave. Within seconds of the start of the interview, Defendant engaged Agent Butterfield in casual conversation. And within the first three minutes after sitting down, when Agent Butterfield asked Defendant if he knew why he was at the police station, Defendant replied, "My daughters being touched. . . . I thought I had confessed and told enough people." Defendant was relaxed and forthcoming throughout the interview with little prompting or input from the officers, describing how sexually arousing he found it to touch his daughters and how he would "transfer

5

that touch" afterward when masturbating to online pornography. Indeed, the officers had to interrupt Defendant to ask their questions. The video clearly demonstrates that Defendant was never "pressed to confess."

{11} The evidence also establishes that the physical location of the interview room did not prevent Defendant from leaving. There is no dispute that Defendant had to go through three doors to get inside the interview room. The first door leading into the lobby was locked because it was after regular business hours. A person with a key unlocked the exterior door, allowed Defendant into the lobby, and locked the door. Defendant was escorted from the lobby into the back part of the building through a second door, which was locked from the lobby side. However, the door passing from the other direction, from the back into the lobby, was not locked. Further, the third door, the door to the interview room, did not have a lock and was not capable of being locked. Accordingly, Defendant could have exited the interview room and walked into the lobby without needing assistance from anyone. We acknowledge that, because it was after 5:00 p.m., Defendant as well as the officers needed to ask someone with a key to open the outside door. Nevertheless, even though the building was locked, the interior doors were not. We conclude that Defendant was free to leave the interview room at any time.

**Totality of the Circumstances**

6

{12}     Defendant raises a myriad of issues and asserts that the totality of the circumstances establish that he was subject to the equivalent of a custodial arrest. We have considered the objective issues and disagree. We address Defendant's remaining arguments below.

{13}     Defendant claims that he was in custody because he was not advised that he was free to end the interview at any time or that he could refuse to answer the officers' questions. This argument lacks merit. The district court found that Defendant was fully advised that he was not under arrest and he was free to leave. To the extent that Defendant argues that there was no testimony at the suppression hearing that he was advised that he was free to leave, we note that, to the contrary, Agent Butterfield testified at the preliminary hearing that he advised Defendant that he was free to leave. More importantly, Defendant's written motion to suppress itself clearly states, "The New Mexico State Police Investigator advised Defendant that he was not under arrest and was free to leave[.]"

{14}     Defendant further contends that the interrogation room was small and located in "the bowels" of the police department, there were no windows in the interrogation room, the door was closed and he believed the door was locked, two police officers participated in the interview, and the interview was recorded. Again, Defendant's assertions are not entirely supported by the evidence. For example, our review of the record establishes that there was a window in the door of the interrogation room and

that the door was not capable of being locked. When asked if he knew whether the door was locked, Defendant testified, "I didn't know either way." In any event, even if Defendant had believed that the door was locked, this belief was not reasonable because the door did not have a lock. *See State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957 (stating that it is for the district court to resolve issues of credibility and the weight of the evidence on a motion to suppress). Morever, we have already concluded that Defendant was free to leave the interrogation room.

{15}     Defendant also argues that his background rendered him more susceptible to police pressure and manipulation, and the officers exploited aspects of his religious and moral background and his history in group counseling sessions in order to elicit information.     We do not consider these subjective factors.     *See Nieto*, 2000-NMSC-031, ¶ 20 ("Custody is determined objectively, not from the subjective perception of any of the members to the interview.").

{16}     We are also not persuaded by Defendant's assertion that the interview was "lengthy" and lasted almost two hours with no breaks. We have previously held that a two-hour interrogation did not constitute a custodial interrogation when the accused drove to the police station in her own vehicle, was not placed in handcuffs or told that she was under arrest, did not inform the officers that she was tired during the two-hour interrogation, and was permitted to drive home after the interrogation. *Bravo*, 2006-NMCA-019, ¶¶ 12-13. Like the facts in *Bravo*, here, Defendant drove himself to the

8

police department in his own vehicle, he was never placed in handcuffs, he was specifically told that he was not under arrest and free to leave, there is no indication that Defendant was tired or requested a break during the interrogation, and he was permitted to drive home after the interrogation.

{17} Finally, Defendant argues that he was treated as a suspect. However, *Miranda* warnings are not required simply because the person questioned is a suspect. *See State v. Munoz*, 1998-NMSC-048, ¶ 42, 126 N.M. 535, 972 P.2d 847 ("It is . . . true that [the d]efendant had become the focus of the police investigation, but this factor alone is not enough to trigger the need to give warnings."). Defendant contends that, because the officer confronted him with the evidence against him and urged him to confess, the interrogation was necessarily custodial. While we recognize that such a manner of questioning could weigh in favor of a finding that Defendant was in custody, we note that the video does not support Defendant's characterization of a "confrontation." Rather, the video is consistent with Defendant's own description that the officer "hinted he knew things" that Defendant had not mentioned.

{18} Based on the totality of the circumstances in this case, we conclude that Defendant was not subject to a restraint on his freedom of movement to a degree associated with a formal arrest. Therefore, Defendant was not entitled to *Miranda* warnings. The fact that Defendant voluntarily drove himself to the police station for the interview, where he was informed that he was not under arrest and was free to

9

leave, are significant in determining that he was not in custody for purposes of *Miranda.* *See Nieto*, 2000-NMSC-031, ¶ 21 (holding that a suspect was not in custody when he "was asked and agreed to accompany police officers to the station, was free to leave or terminate the interview, and was provided transportation to and from the station," even though the interrogation room was small and an officer sat between the suspect and the door); *Munoz*, 1998-NMSC-048, ¶ 43 (holding that a defendant was not in custody when he willingly went with police to be questioned, was not handcuffed or searched, was not interviewed in a locked space, and was taken back home when the interview was completed); *but see Olivas*, 2011-NMCA-030, ¶ 12 (holding that a defendant was in custody and finding it significant that the officers "never informed [the d]efendant that he was not under arrest or that he was free to terminate the encounter at any time").

{19}    To the extent that Defendant continues to rely upon *Olivas*, we reiterate that *Olivas* is distinguishable. Here, unlike in *Olivas*, Defendant drove of his own accord to the station, he was not handcuffed, and he was informed that he was not under arrest and was free to leave. Accordingly, for the reasons stated in this Opinion, we affirm the district court's denial of Defendant's motion to suppress.

{20}    **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

10

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**


_____

**TIMOTHY L. GARCIA, Judge**