This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40322

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**BRYAN SCHUSTER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** The State appeals the district court's order granting Defendant Bryan Schuster's motion to dismiss for violating his speedy trial rights. We reverse.

**DISCUSSION**

**{2}** To determine whether a speedy trial violation has occurred, we consider the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We weigh these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* (internal quotation marks and citation omitted). Even though the district court did not explicitly give any factor specific weight, this does not prevent us from reaching the merits of the State's appeal because "we review the weighing and the balancing of the *Barker* factors de novo." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (text only) (citation omitted). We consider each factor in turn.

## I.  The Length of Delay Weighs Heavily for Defendant

**{3}** The first *Barker* factor functions "both [as] the threshold question in the speedy trial analysis and [as] a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. As the threshold question, the length of delay that triggers a speedy trial inquiry depends on the case's complexity: at least twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387. When weighing delay as a factor, "[a]s the delay lengthens, it weighs increasingly in favor of the accused." *Ochoa*, 2017-NMSC-031, ¶ 14.

**{4}** Here, the delay triggers a speedy trial analysis and weighs heavily against the State. The district court determined that the case was simple.[1] A speedy trial inquiry is proper, then, because the total length of delay in this case was thirty-six months, spanning from Defendant's arrest on March 8, 2019, until the district court dismissed the case for violating Defendant's speedy trial rights on March 16, 2022. Further, this factor weighs heavily against the State because the delay exceeded the threshold for a simple case by twenty-four months. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing a delay of two years in a simple case heavily against the state); *Garza*, 2009-NMSC-038, ¶ 2.

## II.  The Reason for the Delay Weighs Moderately to Heavily for Defendant

**{5}** Under the second *Barker* factor, we evaluate the reasons for each period of delay, determine if either party is responsible for it and, if so, assign weight to it. Delay caused by the defendant is generally weighed against the defendant. *See State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171. Delay caused by the state falls into one of

---

[1] The State asserts that the district court determined the case was "simple to intermediate" exclusively because of an oral comment by the court and does not address the court's written finding that the case was simple. We therefore defer to the court's written finding. *Ledbetter v. Webb*, 1985-NMSC-112, ¶ 34, 103 N.M. 597, 711 P.2d 874 (stating that a court's oral statements "may be used to clarify a finding of fact, [but] may not provide the basis for reversing that finding"); *State v. Diaz*, 1983-NMSC-090, ¶ 4, 100 N.M. 524, 673 P.2d 501 ("It is well established that an oral ruling by the trial court is not a final judgment, and that the trial court can change such ruling at any time before the entry of written judgment.").

three categories: "(1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason," and each generally holds a different weight. *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (text only) (citation omitted). Deliberate or intentional delay weighs heavily against the state. *Id.* Negligent or administrative delay weighs against the state, and "the weight increases with the delay's 'protractedness.'" *State v. Radler*, 2019-NMCA-052, ¶ 19, 448 P.3d 613 (quoting *Garza*, 2009-NMSC-038, ¶ 26, 30) And "a valid reason, such as a missing witness, . . . justif[ies] appropriate delay." *State v. Spearman*, 2012-NMSC-023, ¶ 25, 283 P.3d 272 (internal quotation marks and citation committed).

**{6}**     Here, the district court did not designate the delay into periods demarcated by dates. Instead, it generally assigned the delay as follows: two months "in the early stages of the case" that it attributed to Defendant for an extension of time; approximately six months caused by "the COVID-19 pandemic," which it did not attribute to any party; and "the remainder of the delay"—twenty-eight months—that it attributed to the State. The parties on appeal only dispute the twenty-eight-month delay attributed to the State.

**{7}**     We believe the record is clear enough to organize the delay into six specific periods: (1) March 8, 2019, to June 14, 2019, when the case was before the magistrate court; (2) June 15, 2019, to March 16, 2020, when the case was bound over to the district court until the first state-wide suspension of jury trials due to the COVID-19 pandemic; (3) March 17, 2020, to July 15, 2020, when jury trials were first suspended; (4) July 16, 2020, to November 15, 2020, when the first jury trial suspension was lifted until trials were suspended a second time; (5) November 16, 2020, to January 1, 2021, when jury trials were suspended a second time; and (6) January 2, 2021, to March 16, 2022, when the second jury trial suspension was lifted until the case was ultimately dismissed. We discuss each period in turn and conclude that the twenty-eight-month delay, and the second *Barker* factor in general, weighs moderately to heavily against the State.

## A.     March 8, 2019, to June 14, 2019 (Three Months and One Week)

**{8}**     On March 8, 2019, Defendant was arrested and charged with receiving or transferring a stolen vehicle, felonious possession of a controlled substance, false evidence of title and registration, driving a car with a suspended license, and driving a car without insurance. The State filed charges in magistrate court on the same day, and Defendant was quickly released from custody. In late March, Defendant's counsel entered his appearance, and Defendant requested a sixty-day extension of time to hold the preliminary examination. The magistrate court eventually bound the charges over to the district court on June 14, 2019.

**{9}**     The district court attributed the delay caused by the sixty-day time extension to Defendant, neither party argues this was error, and we therefore presume that the district court was correct. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701. Consistent with the State's concession, we attribute the remaining month and one week

to the State and categorize it as negligent or administrative delay because nothing in the record suggests deliberate or intentional delay. *See Suskiewich*, 2016-NMCA-004, ¶ 9.

## B.      June 15, 2019, to March 16, 2020 (Nine Months)

**{10}**    The State actively moved the case forward early in this period: it filed its criminal information on June 26, 2019, Defendant was arraigned on July 10, 2019, and on August 26, 2019, the State filed several pleadings, including a motion for a scheduling order, a motion to interview witnesses, and a notice of intent to produce its own witnesses. The case was then continued twice: first in January 2020 when Defendant failed to appear; and again in March 2020 when the State failed to obtain lab results for the controlled substance found in Defendant's possession during his arrest.

**{11}**    The State concedes that the delay during this period was negligent or administrative and therefore weighs slightly in favor of Defendant. Although we are not bound by this concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept it based on our independent review of the record. We see no basis for concluding that the State deliberately or intentionally delayed during this period. *See Suskiewich*, 2016-NMCA-004, ¶ 9.

## C.      March 17, 2020, to July 15, 2020 (Four Months)

**{12}**    Our Supreme Court suspended all jury trials on March 17, 2020, due to the COVID-19 pandemic. In June, the State requested a new scheduling order because the case was never reset after the March 2020 docket call, and the district court rescheduled trial for September 2020. Our Supreme Court lifted the suspension of jury trials on July 15, 2020.

**{13}**    The district court attributed these four months of delay to the COVID-19 pandemic and did not assign the delay to either party. Neither the State nor Defendant urge us to review the court's finding on this point. Thus, we presume the district court was correct. *See Corona*, 2014-NMCA-071, ¶ 26.

## D.      July 16, 2020, to November 15, 2020 (Four Months)

**{14}**    The record does not indicate that the State took any action to move the case forward during this period. Defendant filed a written demand for a speedy trial, and the court sua sponte rescheduled the trial twice to November 2020 and then again to January 2021. Because the State agrees that this time period is attributable to itself, and there is no indication it deliberately or intentionally delayed the proceedings, we weigh these four months against the State as negligent or administrative delay.

## E.      November 16, 2020, to January 1, 2021 (One Month and Two Weeks)

**{15}**  For a second time, our Supreme Court suspended all jury trials due to the COVID-19 pandemic on November 16, 2020, and lifted its suspension on January 1, 2021. Again, the district court did not assign the delay, **[*see id.*]** and neither party on appeal takes issue with this finding. So, we presume the court was correct. *See Corona*, 2014-NMCA-071, ¶ 26.

### F.  January 2, 2021, to March 16, 2022 (Fourteen Months and Two Weeks)

**{16}**  Over this period, the court, sua sponte, rescheduled trial a total of twelve times without providing a reason. Additionally, the State made no attempt to move the case forward. Instead, it amended its notice of intent to call witnesses to reflect a lab technician's name, it substituted its counsel, and it stated to the court during a docket call in February 2022 that it had neither subpoenaed nor contacted its witnesses even though the trial was scheduled in three weeks. All the while, Defendant filed two written demands for a speedy trial on August 31, 2021, and January 5, 2022, and moved to dismiss the case for speedy trial violations on March 4, 2022. We agree with the State that this delay is best classified as a negligent or administrative delay related to a "congested docket[]." *See Garza*, 2009-NMSC-038, ¶ 29.

### G.  Weighing the Periods of Delay

**{17}**  The State urges us to take a bright-line approach and conclude that because its delay is administrative in nature that the delay must weigh "less heavily against the State." We decline to do so. *See id.* ¶ 13 (stating that analysis under the *Barker* factors "specifically rejects inflexible, bright-line approaches" to speedy trial analysis). Instead we look to "the unique circumstances of [the] case." *Serros*, 2016-NMSC-008, ¶ 5. The State's twenty-eight month delay is twice as long as that necessary to trigger a speedy trial inquiry of a simple case. *See Garza*, 2009-NMSC-038, ¶ 2. During those twenty-eight months, the record shows that the State made some efforts to take the case to trial, but there are long periods of time in which it either was inactive, caused further delay, or did not move the case forward.

**{18}**  We conclude that the State's delay weighs moderately to heavily in favor of Defendant. *See Taylor*, 2015-NMCA-012, ¶¶ 12, 15, 17 (assigning heavy weight to the state's fifteen-month negligent delay in a simple case (three months beyond the threshold period) because the state "did nothing to bring the case to trial" (emphasis omitted)); *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 4, 6, 19, 66, 327 P.3d 1129 (assigning moderate weight to a thirty-six-month administrative delay in a complex case (twice as long as the threshold period) because the state marginally sought to move the case forward)). In sum, of the thirty-six months of total delay in this case: two weigh against Defendant; six weigh neutrally; and twenty-eight weigh moderately to heavily against the State. Because the State's period of delay goes well beyond the others, we conclude this factor in total weighs moderately to heavily against the State.

### III.  Defendant Adequately Asserted His Speedy Trial Rights, but This Factor Does Not Weigh Heavily Against the State

**{19}** Under the third *Barker* factor, we analyze Defendant's assertions of his speedy trial right and we assess both "the timing of the . . . assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "[W]e accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay," *State v. Samora*, 2016-NMSC-031, ¶ 19, 387 P.3d 230 (alteration, internal quotation marks, and citation omitted), including whether the defendant "has personally caused or acquiesced to the delay." *State v. Gurule*, ___-NMSC-___, ¶ 37 ___ P.3d ___ (S-1-SC-37879, Dec. 7, 2023) (internal quotation marks and citation omitted).

**{20}** Defendant adequately asserted his right to a speedy trial. The record supports five assertions—an oral demand at Defendant's arraignment, three written demands, and a motion to dismiss for speedy trial violations. Each assertion individually would suffice. *See, e.g.*, *Ochoa*, 2017-NMSC-031, ¶ 41. However, we do not assign heavy weight to these for two reasons. First, other than his motion to dismiss, his assertions are pro forma and therefore are given little weight. *See id.* Defendant's three written demands are identical to each other, the body of each is one sentence, and none contain any argument or provide details about the alleged violation. Second, Defendant's written assertions and motion to dismiss were all filed within months of scheduled trials. Such assertions merit less weight because, "the closer to trial an assertion is made, the less weight it is given." *Gurule*, ___-NMSC-___, ¶ 39 (text only) (citation omitted).

**{21}** Regarding Defendant's actions, *see Samora*, 2016-NMSC-031, ¶ 19, the court found Defendant caused two months of delay early on, but as we explained above, the State's delay outweighed Defendant's delay. Further, we do not readily see Defendant acquiescing to any delay, *see Gurule*, ___-NMSC-___, ¶ 37, and the State does not argue acquiescence on appeal.

**{22}** We therefore conclude that the court was correct in finding that Defendant "more than adequately asserted his speedy trial right," but we do not weigh this factor heavily against the State because the demands for a speedy trial were largely pro forma and filed close to the scheduled trial dates.

## IV. Defendant Did Not Show Particularized Prejudice

**{23}** The final *Barker* factor is the prejudice to the defendant caused by the delay, considering the three interests that the speedy trial right was designed to protect: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *Ochoa*, 2017-NMSC-031, ¶ 48. "[The d]efendant must make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *Samora*, 2016-NMSC-031, ¶ 21. Because "some degree of oppression and anxiety is inherent for every defendant who is awaiting trial," this factor weighs in favor of a defendant "only where the pretrial incarceration or anxiety is undue." *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

**{24}** The court found four types of particularized prejudice: lost housing, lost employment, the amplification by the delay of the typical stress and anxiety caused by a pending felony charge, and restriction of Defendant's liberty to Colfax County per his conditions of release. On appeal, the State argues that Defendant failed to show particularized prejudice. We agree.

**{25}** We see no evidence in the record to substantiate a finding that any of the asserted prejudices were particularized. Defendant alleged the first three in his motion to dismiss, but never provided evidentiary support to the district court. *See Spearman*, 2012-NMSC-023, ¶ 39 ("Allegations of counsel are not generally considered evidence. [The d]efendant should have offered some actual evidence in the form of affidavits, testimony, or documentation" to establish particularized prejudice.); *Taylor*, 2015-NMCA-012, ¶¶ 20, 22 (holding that the defendant's claims of prejudice—unsupported by testimony or documentary evidence—were not sufficiently particularized). And because Defendant did not argue or otherwise show that the conditions of release he experienced were undue, *see Parrish*, 2011-NMCA-033, ¶ 32, we decline to hold that merely experiencing conditions of release (which on their face appear to be ordinary) amounts to particularized prejudice. *See Garza*, 2009-NMSC-038, ¶ 37 (holding that the asserted prejudice based on two hours of incarceration and otherwise normal bond restrictions was not particularized).

## V.    The Weighing of Factors Does Not Support a Speedy Trial Violation

**{26}** Because Defendant failed to show particularized prejudice, and not all of the other three factors weigh heavily in his favor, we reverse the district court. *See Gurule*, ___-NMSC-___, ¶ 55 ("To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the state." (text only) (citation omitted)).

## CONCLUSION

**{27}** We reverse.

**{28}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**